F I L E D
Clerk
District Court

SEP 20 2023

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

BRIDGE CAPITAL, LLC,

                    Plaintiff,

v.

DAVID A. WILSON,

                    Defendant.

CASE NO. 1:22-cv-00012

**MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 55(b)(2)**

This civil action arose under a breach of contract claim by Plaintiff Bridge Capital, LLC ("Bridge Capital") against Defendant David A. Wilson ("Wilson") for his failure to pay on a promissory note ("Note"). After the Chief Deputy Clerk entered default of Wilson (ECF No. 11) for his failure to answer the First Amended Complaint ("FAC") (ECF No. 4), Bridge Capital filed a Motion for Default Judgment Pursuant to Federal Rules of Civil Procedure 55(b)(2). (ECF No. 14.) The matter came before the Court for a hearing on September 14, 2023, during which time the Court GRANTED Bridge Capital's motion. The Court now issues this memorandum decision setting forth its reasoning for granting default judgment.

## I.      BACKGROUND

On September 24, 2018, Bridge Capital and Wilson entered into an agreement for a short term, three month loan in which Bridge Capital would give Wilson $150,000 in cash. (FAC ¶ 9; Note, ECF No. 4-1.) In return, Bridge Capital would charge 16.67 points, or $30,000 for the origination of the loan, which raised the total principal amount to $180,000. (FAC ¶ 10.) The loan matured on December 24, 2018[1]—at which time Wilson owed the full balance due to Bridge Capital.

---

[1] The Promissory Note has two different maturity dates—December 24, 2018, and December 23, 2018. (Promissory Note 1–2.) Because Bridge Capital asserts in its FAC the maturity date is the

(FAC ¶ 11.) In the event of Wilson's default for failing to pay, the Terms and Payments provision of the Note provides an additional 10% of the amount due, which in this case is $18,000 on the maturity date and a $1,000 service fee for every late payment. (Note 2.) Therefore, because Wilson did not pay any of the amount due at the time of maturity, the principal for Wilson's loan totaled $199,000. (*See* Note 1–6.)

Bridge Capital initiated this breach of contract action on September 7, 2022, by filing a Complaint. (ECF No. 1.) On February 2, 2023, Bridge Capital filed its FAC against Wilson. (ECF No. 4.) After multiple, unsuccessful efforts to personally serve Wilson with a copy of the FAC, Bridge Capital sought a court order permitting it to serve the FAC by publication pursuant to the federal rules and Commonwealth law. (Mot. Allow. Serv. by Pub., ECF No. 7.) The Court granted the motion (Order, ECF No. 8), and Wilson failed to file a response. On a motion by Bridge Capital, the Chief Deputy Clerk entered default against Wilson. (ECF No. 11.) Bridge Capital then moved for Default Judgment Pursuant to Federal Rules of Civil Procedure 55(b)(2). (ECF No. 14.)

## II.     LEGAL STANDARD

Under Federal Rules of Civil Procedure 55(b)(2), the Court has discretion to enter default judgment after entry of default. However, default judgments are not a matter of right. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Pursuant to Federal Rules of Civil Procedure 54(c), "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The Ninth Circuit Court of Appeals has held that under Federal Rules of Civil Procedure 54(c), a court is not limited to awarding the numerical value a defendant pleads *if* the defendant prays for additional damages in their

latter, and this favors Wilson, the Court considers December 24, 2018, the maturity date which is consistent with the other language in the contract.

2

pleadings, "the amount of which . . . to be proved at trial." *Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974); *see Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp.*, 149 F. Supp. 3d 1208, 1214 (D. Nev. 2016) (held a prayer seeking additional damages for breach of contract to be proven at trial sufficiently placed defendant on notice that the award could exceed plaintiff's nominal request).

The Ninth Circuit has set forth the following factors ("*Eitel* factors") for courts to consider in exercising their discretion to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (citation omitted); *see e.g.*, *Unicorn Corp. v. Forson Holdings (CNMI)*, No. 1:20-cv-00014, 2022 WL 18276317, at *3 (D. N. Mar. I. Feb. 18, 2022); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

Upon entry of default, the well-pleaded factual allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). If default judgment is granted, the plaintiff must establish damages with reasonable certainty. *Same Day Garage Door Servs. v. Y.N.G. 24/7 Locksmith LLC*, No. CV-19-04782-PHX-MTL, 2020 WL 1659913, at *3 (D. Ariz. Apr. 3, 2020).

## III.    DISCUSSION

### 1. Possible Prejudice to the Plaintiff

The first factor asks if a plaintiff would suffer prejudice if the Court does not enter default judgment. The Court finds that the first *Eitel* factor weighs in favor of Bridge Capital because if the Court does not enter default judgment, Bridge Capital will be without recourse. District courts in the Ninth Circuit Court of Appeals consistently find that a litigant seeking default judgment against a

party that is unwilling to cooperate or defend itself will be without recourse if the court does not enter default judgment. *See, e.g.*, *Arman v. JN Saipan CNMI, LLC*, No. 1:21-cv-00024, 2022 WL 3156501, at *4 (D. N. Mar. I Aug. 9, 2022); *Carbon Chemistry Ltd. v. Banoun*, No. SA CV 20-11031-DOC-(Skx), 2021 WL 4437508, at *3 (C.D. Cal. July 29, 2021); *Constr. Laborers Tr. Funds v. Ver O' Roses Maint.*, No. 16-07351-BRO (SKx), 2017 WL 10619857, at *4 (C.D. Cal. Feb. 22, 2017); *Fed. Trade Comm'n v. Kutzner*, No. CV 16-00999-BRO (AFMx), 2017 WL 5230898, at *4 (C.D. Cal. Aug. 28, 2017). In this case, as Bridge Capital has indicated, Wilson has failed to plead, appear, defend, or otherwise answer any of Bridge Capital's attempted contacts. (Order Allow. Serv. by Pub. 4, ECF No. 8.) The Court thus finds that Bridge Capital is prejudiced if default judgment is not entered.

### 2. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

"The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175 (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996). These two factors are the most important. *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019).

The question is whether these allegations state a claim upon which relief may be granted. The Federal Rules of Civil Procedure 8 requires that a plaintiff provide a "short and plain statement" of their entitlement to relief to put a defendant on notice of the claim and allow them to answer or otherwise respond appropriately. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *id*. at 570). In other words, the complaint must include facts permitting the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id*.

"Upon entry of default, the well-pleaded factual allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages." *Unicorn Corp.*, No. 1:20-cv-00014, 2022 WL 18276317, at *3 (citing *Geddes*, 559 F.2d at 560).

Bridge Capital properly alleges a breach of contract claim in its FAC. A party establishes a breach of contract claim in the CNMI by proving the following: "(1) the existence of a valid contract; (2) the breach of an obligation imposed under the contract; and (3) damage to the plaintiff resulting from the breach." *Id*. at *7 (citing *Pac. Rim Land Dev., LLC v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:19-cv-00016, 2020 WL1942454, at *5 (D. N. Mar. I. Apr. 23, 2020). Bridge Capital's FAC identifies the terms of the agreement/contract in the Note, the parties that entered into the agreement, Wilson's failure to pay as required by the Note, and the damage to Bridge Capital. (FAC ¶ 10–18; Note 1–6.) Therefore, these two factors weigh in favor of the Court entering default judgment.

### *3. Sum of Money at Stake in the Action*

The sum of money at stake must be balanced against the seriousness of the offense. *Constr. Laborers Trs. Funds for S. Cal. Admin. Co.*, 316 F. Supp. 3d at 1201. "The amount at stake must not be disproportionate to the harm alleged." *Id*. If it is, such as where the sum of money requested is too large or unreasonable, default judgments are disfavored. *Id*.

At the hearing on September 14, 2023, Bridge Capital sought a total of $621,023.79, which includes the principal of $199,000 and $422,023.79 in interest.

Although the amount Bridge Capital demands is significantly higher than the original loan of $180,000, the interest rate of 24% is not the maximum interest that Bridge Capital could have

charged. Under CNMI law, Bridge Capital is a CNMI licensed lending and financial services company authorized to make loans (FAC ¶ 6) and, therefore, could have charged Wilson a compounded monthly interest rate of 34%. 4 CMC § 60151(2). This factor therefore weighs in favor of Bridge Capital.

### 4. Possible Disputes Concerning Material Facts, Whether Default Is Due to Excusable Neglect, and Strong Policy of Deciding Decisions on the Merits

Where "[d]efendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Trident Inv. Partners Inc. v. Evans*, No. CV-20-01848-PHX-DWL, 2021 WL 75826, at *2 (D. Ariz. Jan. 8, 2021). A defendant's failure to appear suggests that there is no genuine issue of material fact. *See Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). The same is true for excusable neglect. *Laser Spine Inst., LLC v. Playa Advance Surgical Inst., LLC*, No. 2:18-cv-06920-ODW (JPRx), 2020 WL 5658711, at *4 (C.D. Cal. Sept. 23, 2020) ("There is little possibility of excusable neglect where a defendant fails to appear and respond . . . ." (internal quotation and citation omitted)).

Given Wilson's failure to appear, the fifth and sixth factors weigh in favor of entry of default judgment. The seventh factor generally weighs against default judgment, given that cases "should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted).

Based on the *Eitel* factors analyzed above, this Court concludes that the balance weighs in favor of entering default judgment for Bridge Capital and against Wilson. Therefore, the Court grants Bridge Capital's motion for the entry of default judgment.

## IV.    DAMAGES

"In the CNMI, '[n]o statutory authority exists in the Commonwealth for prejudgment interest rates, but prejudgment interest may be provided for by contract.'"[2] *Unicorn Corp.*, No. 1:20-cv-00014, 2022 WL 18276317, at *18 (footnote omitted) (citing *Triple J Saipan, Inc. v. Ogo*, 2020 MP 15 ¶ 14 (N. Mar. I. 2020)). "In addition, courts may allow prejudgment interest as part of a damage award to compensate for detention of money or property even when interest is not stipulated for by contract or authorized by statute." *Manglona v. Baza*, 2012 MP 4 ¶ 23 (N. Mar. I. 2012) (citing *Manglona v. Commonwealth*, 2005 MP 15 ¶ 43 (N. Mar. I. 2005)). In *Manglona v. Government of the Northern Mariana Islands*, the Commonwealth Supreme Court discussed the proper analysis for prejudgment interest in the absence of controlling statutory law and determined that because "none of our other statutory laws discussing interest rates are analogous enough to a prejudgment interest context to use them in setting the appropriate rate," it adopted the federal approach—namely, that an "award of prejudgment interest must be equitable and compensate a party for its actual losses." 2010 MP 10 ¶ 30 (N. Mar. I. 2010). "Although a post-judgment interest statute may influence courts in determining the appropriate prejudgment interest award, . . . courts must consider the factual circumstances surrounding the contract, deciding the interest rate based on equity and the wronged

---

[2] The statute, 4 CMC § 60151(3) does state that "[n]o action shall be maintained in any court of the Commonwealth to recover a higher rate of interest than 2 percent per month on the balance due upon any contract made by a licensee under this chapter." Additionally, 4 CMC § 5301 states, "[n]o action shall be maintained in any court in the Commonwealth to recover a higher rate of interest than one percent per month . . . involving a principal sum of over $300." However, 4 CMC § 60151(2), which permits Bridge Capital to charge an interest of up to 34%, is not withstanding these limitations.

party's actual losses." *Isla Dev. Prop., Inc. v. Jang*, 2017 MP 13 ¶ 15 (N. Mar. I. 2017). Because "[p]rejudgment interest serves to compensate for the deprivation of the money due from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury that damages are intended to redress," prejudgment interest is calculated "from the date of the loss or the date the complaint was filed to the date final judgment is entered." *Triple J. Saipan*, 2020 MP 15 ¶ 16 (internal quotations and citations omitted).

In this case, as outlined in the Note that was attached to the FAC, the parties stipulated to a 24% interest rate compounded on the first day of each month after the maturity date. (Note 1.) At the hearing on September 14, 2023, Bridge Capital sought a total of $621,023.79 that consists of $199,000 in principal and $422,023.79 in interest. Although this number was not specifically alleged in Bridge Capital's FAC, the Court finds that Bridge Capital's request is not different in kind or amount as Bridge Capital's demand in its pleadings as required under Federal Rules of Civil Procedure 54(c). Bridge Capital sought in its FAC, "$489,418.79, as of September 1, 2022, and in a final amount to be proven at trial." (FAC ¶ 38.) Bridge Capital included in its request general damages, "comprising of principal, compounded interest, and late fee." (FAC Prayer.) Under *Henry*, the Court concludes Bridge Capital's demands for damages in its FAC sufficiently put Wilson on notice to the amount request at the hearing, which consisted of the principal, compounded interest, and late fee to be proven at trial.

The Court finds that after conducting an accounting, determining the amount of damages, establishing the truth of the allegations, and investigating any other matter, that Bridge Capital is

entitled to entry of default judgment against Wilson for $621,023.79. In support of this conclusion, the Court relies on the declarations presented by Bridge Capital in support of the motion.

First, Cristina S. Cabaltica, Bridge Capital's internal auditor and comptroller, calculated the total amount due on Wilson's Note at the time of the hearing on September 14, 2023. Cabaltica is qualified to calculate the total due on Wilson's Note because calculating promissory notes is a regular responsibility of her job at Bridge Capital. (Decl. Cabaltica 2, ECF No. 14-4.) Cabaltica used the information provided in the Promissory Note—principal amount of $180,000 (including $30,000 in points), 10% late fee and $1,000 service feed (both are counted as principal), and compounded monthly interest of 24% from date of maturity—to calculate the total due as of September 14, 2023, as $621,023.79.

Last, Bridge Capital provided a Declaration by John K. Baldwin, a member of Bridge Capital, LLC, in which he stated, based on personal knowledge and interactions with Wilson, that Wilson is not a minor or protected service member. (Decl. Baldwin, ECF No. 14-3.) Further, in the twenty years that Baldwin has known Wilson, he does not allege any facts indicating Wilson is incompetent. (*See id.*) Therefore, Wilson does not need to be represented by a general guardian under Federal Rules of Civil Procedure 55(b)(2). Wilson has not personally or by legal representation appeared in this action, and thus, notice to Wilson of the application for default judgment prior to the hearing was not required under Federal Rules of Civil Procedure 55(b)(2).

As such, the Court awards Bridge Capital $621,023.79 in damages, consisting of $199,000 in principal and $422,023.79 in interest, plus post-judgment interest at the federal rate.

## V.   CONCLUSION

For the reasons set forth above, the Court GRANTS Bridge Capital's motion for entry of default judgment for $621,023.79 plus post judgment interest at the applicable federal rate, and

attorney's fees and costs as allowed for under the Note. The Court therefore directs the Clerk to enter default judgment in favor of Plaintiff Bridge Capital, LLC and against Defendant David A. Wilson in the amount of $621,023.79 plus the applicable federal interest rate for post judgment interest, and attorney's fees and costs. Bridge Capital shall file its petition for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54(d).[3]

IT IS SO ORDERED this 20th day of September, 2023.

_____
RAMONA V. MANGLONA
Chief Judge

---

[3] Bridge Capital filed its Petition for Attorney's Fees and Costs (ECF No. 18) on September 18, 2023, which will be addressed in a separate order.