F I L E D
 Clerk
 District Court
JAN 09 2024
for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| BRIDGE CAPITAL, LLC,<br><br>Plaintiff,<br>v.<br><br>DAVID A. WILSON,<br><br>Defendant. | Case No. 1:22-cv-00012<br><br>**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

Before the Court is Plaintiff Bridge Capital, LLC's Supplemental Petition for Attorneys' Fees and Costs ("Pet.," ECF No. 22) pursuant to Federal Rules of Civil Procedure 54(d)(2). For the reasons detailed herein, the Court GRANTS Bridge Capital's Petition at the amount of $13,017.50 in attorneys' fees plus $1,367.70 in costs, for a total of $14,385.20.

I.   **PROCEDURAL HISTORY**

The Court granted Bridge Capital's motion for default judgment on September 14, 2023, for Defendant David A. Wilson's failure to pay on a promissory note ("Note"). (Note 5, ECF No. 4-1.) The Court also awarded Bridge Capital attorneys' fees and costs pursuant to the Note. (Mem. Decision, ECF No. 19.) Bridge Capital filed its Petition for Attorneys' Fees and Costs on September 18, 2023. (Suppl. Pet., ECF No. 18.) Four days later, the Court denied the Supplemental Petition in part because Bridge Capital did not satisfy the lodestar requirement to justify the hours of services performed and the rates of Associate Attorney Anthea Yuan and Paralegal Auralou Sabangan. (Order Att'ys' Fees, ECF No. 21.) The Court, however, granted

the Supplemental Petition for costs and the hourly rate of $250 for Attorney Michael Dotts. (*Id.* at 3.) Bridge Capital was given leave to file an amended petition to identify the hours of work performed by Dotts and to justify the rates and hours for Yuan and Sabangan. (*Id.*)

In response to the order, Bridge Capital filed its Petition seeking $5,075 in attorneys' fees for Dotts's 20.3 hours of services at a rate of $250 an hour; for Yuan's services of 11.5 hours at a rate of $225 an hour; and for Sabangan for 44.6 hours at $150 an hour. (Pet. 2.) In total, Bridge Capital seeks $13,017.50 in attorneys' fees and $1,367.70 in costs for representation in this matter. (*Id.*)

## II.  LEGAL STANDARD

After entry of judgment, a party may move for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), which provides that

> [u]nless a statute or a court order provides otherwise, the motion must:
>
> > (i) be filed no later than 14 days after the entry of judgment;
> >
> > (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> >
> > (iii) state the amount sought or provide a fair estimate of it; and
> >
> > (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

When the Court exercises diversity jurisdiction, state substantive law governs such that "an award of attorney fees is also governed by state law." *Muniz v. UPS*, 738 F.3d 214, 218 (9th Cir. 2013) (citing *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003)). Since the Court is exercising diversity jurisdiction in the instant case, the law of the Commonwealth of the Northern Mariana Islands ("CNMI") determines the standards and factors

/ / /

for determining an award of attorneys' fees. *See id.* (applying California state law for determining an award of attorneys' fees).

The CNMI Supreme Court has outlined a two-step process for determining an award for attorneys' fees wherein the trial court has "'wide latitude' in awarding fees." *In re Malite* (*Malite II*), 2016 MP 20 ¶¶ 16-17 (citing *In re Malite* (*Malite I*), 2010 MP 20 ¶¶ 44-45). "First, the court must determine whether the requested fees are reasonable by considering similar fee agreements in the local legal community and relevant Model Rule of Professional Conduct ('MRPC') 1.5 factors." *Id.* ¶ 17 (citing *Malite I*, 2010 MP 20 ¶ 45). The MRPC 1.5 factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

*Id.* (quoting MRPC 1.5(a)).[1] At this step, the court "consider[s] basic lodestar information (i.e.,

---

[1] These factors are substantially similar, but not identical, to the factors relevant for an attorneys' fee determination that the Ninth Circuit outlined in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which was a case premised on federal question jurisdiction. The *Kerr* factors are

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10)

an attorney's hourly rate multiplied by the number of hours worked) to allow the court to ascertain a prevailing market rate." *Bank of Guam v. Cabrera*, No. 17-0234, at 7-8 (N. Mar. I. Commw. Super. Ct. Jan. 25, 2019) (Order Granting Attorney Fees and Costs in the Amount of $1,837.36); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citations omitted) ("District courts must calculate awards for attorneys' fees using the 'lodestar' method," which requires "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."). "Second, the court must determine the appropriate fee award"—the court may award requested fees it deems reasonable or fashion an appropriate remedy for requested fees it deems unreasonable. *Malite II*, 2016 MP 20 ¶ 17 (citing *Malite I*, 2010 MP 20 ¶ 45). The party requesting attorneys' fees bears "the 'burden' of showing that the fees incurred were allowable, reasonably necessary to the conduct of the litigation and reasonable in amount." *Bank of Guam*, No. 17-0234, at 8 (citing *Ishimatsu v. Royal Crown Ins. Corp.*, 2010 MP 8 ¶ 68).

**III.   ANALYSIS**

The Court already granted Dotts's hourly rate and $1,367.70 for costs incurred. (Order Att'ys' Fees 3.) Therefore, the Court will now consider if the attorneys' fees requested as a whole are reasonable.

/ / /

/ /

---

the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Notably, the CNMI Supreme Court's factors do not include the tenth and twelfth *Kerr* factors. As such, the Court need not consider those factors. *See Johnson v. Incline Vill. Gen. Improvement Dist.*, 5 F. Supp. 2d 1113, 1116 (D. Nev. 1998) ("Where federal substantive law applies, a court awards attorney's fees in light of the 12 factors listed in *Kerr* . . . .").

### A. First factor: time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly

Bridge Capital asserts in its Petition that 80 hours of legal services are reasonable and necessary for this case. In particular, two attorneys rendered 31.8 hours of service, and one paralegal rendered 44.6 hours of service. (Pet. 2.) The Court will address each request below.

The Court has previously found that for a simple breach of contract claim that resulted in a default judgment, 27.55 hours spent by the attorney was reasonable. *H.K. Pangelinian & Assocs., LLC v. Am. Sinopan, LLC*, No. 1:21-cv-00010, 2023 U.S. Dist. LEXIS 111007, at *8 (D. N. Mar. I. June 27, 2023). In this case, Bridge Capital had to expend additional hours to perfect service of the summons and complaint on Wilson because he is no longer in the CNMI and then to justify its claimed damages under the Note. The damages calculations were also more complicated due to Bridge Capital's statutory rights as a lending licensee under the CNMI law. For these reasons, the Court finds that the total hours of services rendered reasonable in this case.

### B. Second factor: the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer

It is unclear whether it was apparent to Bridge Capital that this case would particularly preclude Dotts, Yuan, or Sabangan from other employment, beyond the general notion that retention of one client reduces an attorney's ability to accept other cases because of time constraint. This non-limiting factor thus weighs in favor of some reduction in fees. *See Bank of Guam*, No. 17-0234, at 12 (noting that "some reduction in fees and costs seems appropriate" because counsel was not precluded from other employment opportunities). Nevertheless, the Court finds further reductions unnecessary because of the reduced rates charged by Dotts Law Office to Bridge Capital.

**C. Third and seventh factors: the fee customarily charged in the locality for similar legal services and the lawyer's experience, reputation, and ability of the lawyer**

The Court previously found that the fee requested by Dotts at a rate of $250 an hour was reasonable given his experience, reputation, and ability. (Order Att'ys' Fees 3.) Therefore, for these factors, the Court need only analyze if Sabangan and Yuan's requested rates are reasonable given the fees customarily charged in Saipan.

*i.  Rate for Sabangan*

Bridge Capital cites no legal authority that supports the Court awarding a rate of $150 for Sabangan's paralegal services. Nevertheless, the Court may take judicial notice of its own records. *Chandler v. United Stated*, 378 F.2d 906, 909 (9th Cir. 1976).

The Court has previously awarded a rate of $125 and $90 an hour for services performed by paralegals. The Court awarded the higher rate of $125 an hour when the paralegal was based in New York City, and therefore the Court found it appropriate to use a national rate. (Order Granting Pl.'s Att'ys' Fees and Costs 13, *Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, No. 18-cv-00030 (D. N. Mar. I. May 5, 2020), ECF No. 106.) In *Wang*, the paralegal only had one year of reported paralegal experience. (Decl. Halegua ¶ 37, *Wang*, No. 18-cv-00030, ECF No. 63.)

For paralegals based in Saipan, the Court has previously found that a rate of $90 an hour is reasonable for services rendered. *Genc v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:20-cv-00031, 2022 WL 16902801, at *5 (D. N. Mar. I. Nov. 12, 2022) (finding $90 an hour reasonable for a paralegal in Saipan when plaintiff did not justify the higher rate requested); (Order Awarding Pl. Att'y Fees and Costs 12, *Xuan v. Joo Yeon Corp. & Se Young Corp.*, No. 1:12-cv-00032 (D. N. Mar. I. Jan. 27, 2017), ECF No. 226 (awarding $90 an hour for services rendered by a paralegal)).

Bridge Capital did not provide any community data to support the requested hourly rate of $150 for Sabangan's paralegal services, other than her own. Nevertheless, the fact that Sabangan was a licensed attorney in the Philippines before coming to the CNMI and has over 38 years of experience as a Legal Assistant, Paralegal, Office Manager, and Foreign Legal Consultant is significant. (Sabangan's Decl. ¶ 3, ECF No. 22-1.) Moreover, Sabangan performed substantive work in this case such as drafting the first amended complaint, motions for default judgment, and memoranda in support of motions. (Dotts's Decl. 4, ECF No. 18-1.) Sabangan's legal background and years of service in the field therefore justifies a higher rate than the $125 an hour that the Court awarded in *Wang*. (*See* Order Granting Pl.'s Att'ys' Fees and Costs 13, *Wang*, No. 18-cv-00030.)

Therefore, given Sabangan's legal background, decades of service in the field, and the substantive work she performed in this case, her rate of $150 per hour is reasonable.

        ii.   Rate for Yuan

Bridge Capital again did not provide any community data to support an award of $225 an hour for legal services performed by Yuan. According to Yuan's Declaration, she has been a licensed attorney since 2017 and has been working in the CNMI since 2018 with a specialized field as a tax attorney. (Yuan's Decl. ¶¶ 2, 6, ECF No. 22-2.) The Court has previously found that a rate of $175 an hour for an attorney with less than ten years' experience was reasonable. *Xerox Corp. v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:20-cv-00037, 2021 WL 6884602, at *3 (N. Mar. I. Aug. 9, 2021). Given the passage of time since this prior finding and based on Yuan's legal background, the Court finds an hourly rate of $225 reasonable for Yuan. (*See* Yuan's Decl. ¶ 6.)

### D. Fourth factor: amount involved and results obtained

Dotts Law Office was successful in obtaining judgment in the amount of $621,023.79 for the breach of contract claim. (J. 1, ECF No. 20) A total of $13,017.50 in attorneys' fees plus $1,367.70 in costs, for a total of $14,385.20 in costs and fees does not even amount to 5% of the judgment amount. (*See* J. 1.) This small percentage warrants in favor of finding the total fees and costs reasonable.

### E. Fifth factor: time limitations imposed by the client or the circumstances

Dotts does not assert that Bridge Capital imposed time limitations or that the circumstances warranted expedited work. Nor does the work rendered by Dotts Law Firm reflect that there were time limitations imposed. As such, this factor is neutral in determining if the attorneys' fees and costs are reasonable.

### F. Sixth factor: nature and length of the professional relationship with the client

Because Bridge Capital is a long-time client of Dotts, the Court finds that this factor weighs in favor of finding the requested attorneys' fees reasonable. *Cf. Atom's Co., Ltd. v. Mallari*, No. 15-0237, at 6 (N. Mar. I. Commw. Super. Ct. June 7, 2018) (Written Decision Following Evidentiary Hearing) ("Generally, a longer relationship between Counsel and his client weighs in favor of finding a high value retainer or contingency fee agreement as reasonable[.]").

### G. Eighth factor: whether the fee is fixed or contingent

Dotts Law Office representation of Bridge Capital was based on a fixed rate agreement. (Dotts's Decl. ¶ 4.) Because Dotts Law Office already reduced the rate it charged Bridge Capital and reduced some of the hours (Dotts's Decl. 4; Suppl. Pet. 2), the Court concludes that this factor weighs in support of the reasonableness of the request.

### IV. CONCLUSION

Based on the foregoing, the Court GRANTS Bridge Capital's Petition for Attorneys' Fees and Costs. The Court awards Plaintiff $13,017.50 in attorneys' fees plus $1,367.70 in costs, which totals $14,385.20. The Clerk is directed to issue an amended judgment to include this award for attorneys' fees and costs.

IT IS SO ORDERED this 9th day of January 2024.

_____
RAMONA V. MANGLONA
Chief Judge